[Cite as *In re A.K.*, 2011-Ohio-693.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Sheila G. Farmer, P.J. |
| | : | Julie A. Edwards, J. |
| A.K. (DOB 03/23/2009) | : | Patricia A. Delaney, J. |
| | : | |
| MINOR CHILD | : | Case No. 2010CA00256 |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil Appeal from Stark County
                            Court of Common Pleas, Juvenile
                            Division, Case No. 2009JCV00358

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     February 14, 2011

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

LISA A. LOUY                          MARY WARLOP
Legal Counsel                         116 Central Plaza South
Stark County Job & Family Services    Suite 500
300 Market Avenue, North              Canton, Ohio  44702
Canton, Ohio 44702

*Edwards, J.*

{¶1} Appellant, Lashaun Hudson, appeals from the August 17, 2010, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, terminating her parental rights in regard to A.K. and granting permanent custody of A.K. to Stark County Department of Job and Family Services.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2} Appellant Lashaun Hudson is the biological mother of A.K. (DOB 3/23/2009).

{¶3} On March 25, 2009, Stark County Department of Job and Family Services. (SCDJFS) filed a complaint alleging that A.K. was a dependent and neglected child. The complaint indicated that the family had an open court case involving three other children who were in the temporary custody of SCDJFS. On the same date, A.K. was taken into emergency temporary custody. An emergency shelter care hearing was held on March 26, 2009. As memorialized in a Judgment Entry filed on March 27, 2009, the trial court found probable cause existed for the filing of the complaint and ordered A.K. into the emergency temporary custody of SCDJFS.

{¶4} An adjudicatory hearing was held on April 22, 2009. At the hearing, appellant stipulated to a finding of dependency and the trial court, pursuant to a Judgment Entry filed on April 27, 2009, found A.K. to be a dependent child. Temporary custody of A.K. was granted to SCDJFS.

{¶5} On October 27, 2009, SCDFJS filed a motion for permanent custody of A.K., pursuant to R.C. 2151.414. A hearing on such motion was held on January 5, 2010. As memorialized in a Judgment Entry filed on May 21, 2010, the trial court found

that A.K. was a dependent child and that she could not and should not be placed with either parent at this time or within a reasonable time. A best interest hearing was scheduled for June 24, 2010. The trial court, in its May 21, 2010, Findings of Fact and Conclusions of Law, stated, in relevant part, as follows:

{¶6} "39) The Court finds that following the placement of the children[1] outside the home and, notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the children to be placed outside the home, the parents have failed to (sic) continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home. ORC §2151.414(E)(1).

{¶7} "40) The Court finds that the severe and chronic mental retardation and chemical dependency of parents makes them unable to provide an adequate permanent home for the children at the present time and in the foreseeable future. ORC §2151.414(E)(2).

{¶8} "41) The Court finds that parents have abandoned these children, by failing to visit or maintain contact for more than ninety days. ORC §2151.414(E)(10).

{¶9} "42) The Court finds that parents have demonstrated a lack of commitment toward the children by failing regularly to support, visit or communicate with the children when able to do so. ORC §2151.414(E)(4).

{¶10} "43) The Court finds that parents have demonstrated a lack of commitment toward the children by actions showing unwillingness to provide an adequate permanent home for the children, including failure to comply with case plan objectives. ORC §2151.414(E)(4).

---

[1] The trial court's Findings of Fact and Conclusions of Law referred to all of appellant's children.

{¶11} "44) The Court finds that Mother has placed the children at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued requiring treatment of the parent was journalized as part of a dispositional order with respect to the child. ORC §2151.414(E)(9)."

{¶12} A best interest hearing was held on June 24, 2010. The trial court issued Findings of Fact and Conclusions of Law on July 13, 2010. Pursuant to a Judgment Entry filed on August 17, 2010, which incorporated the trial court's July 13, 2010, Findings of Fact and Conclusions of Law, the trial court found that A.K. was a dependent child, that she could not and should not be placed with either parent at this time or within a reasonable time, and that it was in her best interest for permanent custody to be granted to SCDJFS. The trial court terminated appellant's parental rights and granted permanent custody of A.K. to SCDJFS.

{¶13} Appellant now raises the following assignment of error on appeal:

{¶14} "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTEREST OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY."

I

{¶15} Appellant, in her sole assignment of error, argues that the trial court erred in granting permanent custody of A.K. to SCDJFS because SCDJFS failed to show that a grant of permanent custody was in A.K.'s best inertest. We disagree.

{¶16} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 120 N.E.2d 118; *In re: Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 481 N.E.2d 613.

{¶17} In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60; See also, *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel,* 55 Ohio St.3d at 74, 564 N .E.2d 54.

{¶18} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law rendered by the trial court judge." *Id.* Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is

best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

**{¶19}** Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 419, 674 N.E.2d 1159; see, also, *In re: Christian,* Athens App. No. 04CA10, 2004-Ohio-3146; *In re: C. W.,* Montgomery App. No. 20140, 2004-Ohio-2040.

**{¶20}** Pursuant to 2151.414(B)(1), the court may grant permanent custody of a child to the movant if the court determines "that it is in the best interest of the child to grant permanent custody to the agency that filed the motion for permanent custody and that any of the following apply:

**{¶21}** "(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period, ... and the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with the child's parents......

**{¶22}** "(b) The child is abandoned…

**{¶23}** "(d) The child has been in the temporary custody of one or more public children services agencies ... for twelve or more months of a consecutive twenty-two month period...."

**{¶24}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors,

including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶25} In the case sub judice, the trial court found that A.K. could not and should not be placed with either parent at this time or in the foreseeable future. Appellant does not challenge this finding.

{¶26} In the instant case, at the best interest hearing, the only witness to testify was Taranna Francisco, a caseworker with SCDJFS who was assigned to A.K. Francisco testified that A.K. was African-American and had no medical or behavioral problems. Testimony was adduced that A.K. was in a foster home with her three siblings and had been there since February. According to Francisco, A.K. was doing well in her foster home. When asked to describe the interaction between the foster parents and children, Francisco testified as follows:

{¶27} "A. Um a lot of interaction um you know I'm not going to sit here and say that it's always easy for them because you know you have a foster Mom and Dad who have taken in four kids who are dealing with some behaviors. Um but overall they …. they're bonding. Um they interact with them. They do a lot of communicating with the kids you know and they let them know their opinions and how they're feeling is okay. You know even if it's a feeling that maybe they shouldn't have but you know it's okay to

express your feelings as long as its (sic) appropriate.  So they're dealing with …. with those type of things. Um

{¶28}  "Q. Is there extended family that the children have interaction with as far as it relates to foster family?

{¶29}  "A. Um there are relatives yeah.  And there are also um still connected with the previous foster parent also um that they were placed with.

{¶30}  "Q. Okay."  Transcript of June 24, 2010 hearing at 7-8.

{¶31}  Francisco further testified that three relatives came forward asking for placement or custody of A.K. and her siblings, but that while the maternal grandmother decided not to proceed with the same, the other two relatives were not suitable. When asked, she stated that she believed that it was in the children's best interest for permanent custody to be granted because "the kids have been in limbo for so long and I think it's time now that they get a sense of permanency…" Transcript of June 24, 2010 hearing at 9.  She stated that the benefits provided by permanency outweighed the consequences of breaking the bond between A.K. and her parents.

{¶32}  On cross-examination, Francisco testified that appellant has shown up for supervised visits with the children every other week and brought appropriate meals and snacks with her when she came for visits. Francisco testified that the children appeared to enjoy interacting with their parents and that there was a bond between the children and their parents.

{¶33}  The Guardian Ad Litem, in a report dated June 22, 2010, recommended that permanent custody be granted to SCDJFS.  The Guardian Ad Litem, in her report,

indicated that the foster parents stated that they were willing to take on the responsibility of adopting the children.

{¶34} Based on the foregoing, we find that the trial court did not err in finding that permanent custody was in A.K.'s best interest and in granting permanent custody of A.K. to SCDJFS.

{¶35} Appellant's sole assignment of error is overruled.

{¶36} Accordingly, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

By: Edwards, J.

Farmer, P.J. and

Delaney, J. concur

_____

_____

_____

JUDGES

JAE/d0120

[Cite as *In re A.K.*, 2011-Ohio-693.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF:        :

                             :

   A.K. (DOB 03/23/2009)      :

                             :

     MINOR CHILD          :       JUDGMENT ENTRY

                             :

                             :

                             :       CASE NO. 2010CA00256

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.

_____

_____

_____

                             JUDGES